IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| LORITA GRANDBERRY MORROW, ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | No. 2:24-cv-02564-SHL-cgc |
| ) | |
| KROGER LIMITED PARTNERSHIP I, ) | |
|    Defendant. ) | |

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND, DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT, DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION TO DISMISS AS MOOT, AND REMANDING THIS CASE**

Defendant Kroger Limited Partnership I[1] removed this matter from the Shelby County Chancery Court and immediately filed a motion to dismiss the complaint. (ECF Nos. 1, 9.) One day later, Plaintiff Lorita Grandberry Morrow responded in opposition to the removal and filed a separate motion to strike Kroger's motion to dismiss. (ECF Nos. 10, 11.) A week after that, Morrow refiled her response to the notice of removal and styled it as a motion to remand—the text of the two documents is otherwise the same. (ECF No. 12-1.) Kroger filed a combined response to Morrow's opposition to removal, motion to strike, and motion to remand. (ECF No. 13.)

Because the Labor-Management Relations Act does not preempt Morrow's state law claims for purposes of removal jurisdiction, and because Kroger has not proven that the amount in controversy will more likely than not exceed $75,000, the Court **GRANTS** Morrow's motion

---

[1] Plaintiff incorrectly named Defendant as The Kroger Co. in her complaint. (ECF No. 1-1 at PageID 11.) Since Kroger identified the mistake in its notice of removal, the parties have consistently referred to Defendant as Kroger Limited Partnership I in both the style of the case and the substance of their filings. (See ECF No. 10 at PageID 170; ECF No. 11 at PageID 177; ECF No. 12 at PageID 184; ECF No. 13 at PageID 194.) The Court will do so as well.

to remand for lack of subject matter jurisdiction. Kroger's motion to dismiss and Morrow's motion to strike are thus **DENIED AS MOOT**. This case is **REMANDED** to Shelby County Chancery Court.

## BACKGROUND

Morrow worked as a cashier at a Kroger grocery store for almost five years. (ECF No. 1-1 at ¶ 12.) After she was diagnosed with nerve and blood pressure problems, Morrow's physician recommended that she take off work for two weeks. (Id. at ¶¶ 13–15.) Morrow informed her supervisor of her required absence, and Kroger sent her a letter stating that she needed to return to work within fourteen days or apply for a leave of absence. (Id. at ¶¶ 15–16.) Morrow did not qualify for leave under the Family Medical Leave Act and Kroger never responded to her request for a personal leave of absence, so Morrow asked about her pension. (Id. at ¶¶ 17–19.) When Morrow timely returned to work fourteen days later, however, her supervisor informed her that Kroger terminated her employment and she needed to reapply if she wanted to continue working. (Id. at ¶ 22.) She brings this action as a result.

Morrow alleges that Kroger discriminated against her because of her age, sex, race, and disability in violation of the Tennessee Human Rights Act. (ECF No. 1-1 at ¶¶ 24–47.) Morrow also claims that Kroger's supervisory employees engaged in a civil conspiracy to deprive her and other employees of their pensions by firing them before their pensions could vest. (Id. at ¶¶ 48–53.) Kroger has not substantively answered Morrow's claims—instead, it filed a motion to dismiss them, arguing that her claims are governed by a collective bargaining agreement and thus are preempted by the Labor-Management Relations Act. (ECF No. 9 at PageID 157.) Kroger also seeks dismissal because Morrow failed to exhaust her contractual remedies in the

2

collective bargaining agreement, and she lacks standing to assert claims that can only be asserted by her union. (Id.)

## APPLICABLE LAW

There are two paths that lead a claim to federal court. The first path requires the claim to raise a federal question. 28 U.S.C. § 1331. A federal question exists if the well-pleaded allegations in the complaint assert a federal claim irrespective of any potential defenses. Valinsky v. Detroit Edison, 197 F. App'x 403, 406 (6th Cir. 2006) (citing Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 6 (2003)). Because the court ignores potential defenses, a plaintiff can generally avoid federal question jurisdiction by relying exclusively on state law. Id. But a plaintiff cannot artfully plead around federal question jurisdiction if the plaintiff's state law claim is completely preempted by federal law. Strong v. Telectronics Pacing Sys., Inc., 78 F.3d 256, 260 (6th Cir. 1996). The complete preemption doctrine can convert a state law claim into a federal law claim for purposes of federal question jurisdiction. Valinsky, 197 F. App'x at 407 (citing Caterpiller, Inc. v. Williams, 482 U.S. 386, 392 (1987)) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.").

The second path to federal court requires diversity of citizenship between the parties. 28 U.S.C. § 1332. Parties are diverse when the plaintiff and defendant are citizens of different states. § 1332(a)(1). A federal court can only exercise diversity of citizenship jurisdiction if the matter in controversy exceeds $75,000. Id. When a defendant removes a case to federal court, the defendant has the burden to prove by a preponderance of the evidence that the amount in controversy requirement is met. Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 375 (6th Cir. 2007).

3

## ANALYSIS

Morrow argues that her claims are not preempted by the LMRA for purposes of removal jurisdiction and the amount in controversy is not likely to exceed $75,000 for purposes of diversity jurisdiction. (ECF No. 12 at PageID 184.) Kroger asserts the opposite. (ECF No. 13 at PageID 196–97.) The Court addresses each issue in turn.

### I.    FEDERAL QUESTION JURISDICTION

The LMRA gives federal courts the power to hear claims "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The LMRA wholly displaces any state law that substantially implicates collective bargaining agreements because Congress recognized a need for uniformity and predictability in the interpretation of those contracts. DeCoe v. Gen. Motors Corp., 32 F.3d 212, 216 (6th Cir. 1994) (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985)). The compelling need for a uniform body of federal law makes the LMRA one of the few federal statutes with sufficient preemptive force to authorize removal of actions solely seeking relief under state law. Paluda v. ThyssenKrupp Budd Co., 303 F. App'x 305, 308 (6th Cir. 2008) (citing Beneficial Nat'l Bank, 539 U.S. at 7). Thus, when resolution of a state law claim is "substantially dependent" on the analysis of a collective bargaining agreement, the claim must be treated as a federal question under the LMRA for purposes of subject matter jurisdiction. Paul v. Kaiser Found. Health Plan of Ohio, 701 F.3d 514, 519 (6th Cir. 2012) (quoting Allis-Chalmers, 471 U.S. at 220).

A state law claim is substantially dependent on a collective bargaining agreement when it either (1) asserts rights created by the agreement or (2) requires interpretation of the agreement's terms. DeCoe, 32 F.3d at 216. If the plaintiff asserts a right created by state law and can prove

4

the elements of her state law claim without interpreting a collective bargaining agreement, the LMRA will not preempt that claim. Id. (citing Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033, 1037 (6th Cir. 1989), cert. denied, 495 U.S. 946 (1990)). The court looks to the "essence of the plaintiff's claim" to "determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." Id. But a "tangential relationship" to a collective bargaining agreement "will not turn an otherwise independent claim into a claim dependent on the labor contract." Id. (citing Fox v. Parker Hannifin Corp., 914 F.2d 795, 800 (6th Cir. 1990)). State law claims are only preempted by the LMRA when they are "inextricably intertwined with consideration of the terms of the labor contract." Mattis v. Massman, 355 F.3d 901, 905 (6th Cir. 2004) (quoting Jones v. Gen. Motors Corp., 939 F.2d 380, 382 (6th Cir. 1991)).

   Preemption under the LMRA applies differently in the removal context than it does in the summary judgment context.[2] Smolarek v. Chrysler Corp., 879 F.2d 1326, 1331–34 (6th Cir. 1989) (en banc). Just because a defendant might ultimately prove that a plaintiff's claims are preempted does not mean that those claims are removable to federal court. Id. at 1330 (quoting Caterpillar, 482 U.S. at 398). At the removal state, the court only looks to the plaintiff's prima facie case. See Mattis v. Massman, 355 F.3d at 906–07 (analyzing whether the elements of plaintiff's claims require interpretation of a collective bargaining agreement or assert rights established by the agreement for purposes of removal jurisdiction). The purpose of the well-pleaded complaint rule still has some force here—the defendant cannot circumvent a plaintiff's decision to litigate in state court by unilaterally infusing a federal question into an action that

---

[2] The parties' collective reliance on Blair v. Allied Maintenance Corp., 756 S.W.2d 267 (Tenn. Ct. App. 1988), is therefore misplaced. (See ECF No. 10 at PageID 172; ECF No. 12-1 at PageID 189; ECF No. 13 at PageID 199.) The Tennessee Court of Appeals decided Blair at the summary judgment stage, so it holds no weight here. See Blair, 756 S.W.2d at 268.

asserts a state law claim on its face. Caterpillar, 482 U.S. at 398–99. But when a plaintiff invokes a right created by a collective bargaining agreement or asserts a claim relying on the agreement's terms, "the plaintiff has chosen to plead what we have held must be regarded as a federal claim," and she opens the door to removal by the defendant. Id. at 399. Morrow has not opened the door here.[3]

    A.    THRA Claims

Morrow's right to be free from unjust discrimination flows from state law, not the collective bargaining agreement. The THRA gives every Tennessee employee the right to be free from discrimination based on age, race, gender, and disability. Tenn. Code Ann. § 2-21-401(a)(1). It is true that the collective bargaining agreement also provides Morrow with those same rights. (See ECF No. 1-2 at PageID 53 (stating that Kroger "will not discriminate against any employee because of" age, race, gender, and disability).) But Morrow does not assert her rights under the contract—she asserts her independent rights under the THRA.[4] (ECF No. 1-1 at ¶¶ 24–47.)

The fact that the contract also provides a remedy for the same misconduct is not sufficient to trigger preemption because Morrow chose not to seek relief under the contract. See Paul, 701 F.3d at 520–21 (citing Smolarek, 879 F.2d at 1332–34) (holding that the LMRA did not preempt the plaintiff's claim under Ohio's anti-discrimination statute even though the collective bargaining agreement also provided a remedy for handicap-based discrimination

---

[3] Morrow correctly asserts that "a detailed analysis" of her specific claims is necessary. (ECF No. 10 at PageID 172; ECF No. 12-1 at PageID 189.) She then provides three total sentences of analysis, none of which discuss the elements of her claims. (ECF No. 10 at PageID 172; ECF No. 12-1 at PageID 189.) Nevertheless, the Court analyzes the elements here.
[4] Even Morrow's prayer for relief only seeks a judgment against Kroger "for violations of Tennessee Law." (ECF No. 1-1 at PageID 18.)

because the plaintiff only invoked her right under state law).  Morrow chose to proceed exclusively under the THRA, which provides her with rights that cannot be bargained away or usurped by the collective bargaining agreement.  See Smolarek, 879 F.2d at 1332 (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 409–10 (1988)) ("[T]he mere fact that a broad contractual protection against discriminatory—or retaliatory—discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract.").  Even if her THRA claim "would require addressing precisely the same set of facts" as a claim under the collective bargaining agreement, her THRA claim is independent of the agreement if it "can be resolved without interpreting the agreement itself."  See Lingle, 486 U.S. at 410.

Morrow does not rely on the collective bargaining agreement in her complaint—indeed, she does not even mention it.  But Kroger argues that Morrow implicitly relies on the agreement because she alleges that Kroger discriminated against her "with respect to the terms and conditions of her employment," which it construes as an allegation that Kroger discriminated against Morrow "in violation of" those terms and conditions.  (ECF No. 13 at PageID 198 (emphasis altered).)  Kroger misunderstands Morrow's claim.  She never references any of the agreement's specific terms, much less claims that Kroger violated them.

Morrow's allegation that Kroger discriminated against her "with respect to the terms and conditions of her employment" is merely an allegation that Kroger discriminated against her by invidiously firing her, which she must prove under the THRA.  See Pridy v. Piedmont Nat'l Gas Co., Inc., 458 F. Supp. 3d 806, 828 (M.D. Tenn. 2020) (citing Yount v. FedEx Exp., No. W2015-00389-COA-R3-CV, 2016 WL 1056958, at *5 (Tenn. Ct. App. Mar. 17, 2016)) (stating that a discrimination claim under the THRA requires proof of an adverse employment action under

7

circumstances giving rise to an inference of discrimination).  Her allegation of discrimination "with respect to the terms and conditions of her employment" invokes the language of THRA, not the terms of the contract.  See Tenn. Code Ann. § 2-21-401(a)(1) (providing liability for employers that "discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin" (emphasis added)).  And Morrow does not have to prove a specific term or condition of her employment to state her THRA claim.[5]

To state a THRA claim, Morrow must establish that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination based on her status as a member of a protected class.  See Pridy, 458 F. Supp. 3d at 828 (citing Yount, 2016 WL 1056958, at *5).  The first two elements are clearly unrelated to the labor contract and the last two are only tangentially related, which is not enough to establish removal jurisdiction over her claims.[6]

A state court can typically resolve a claim of discriminatory discharge without interpreting a collective bargaining agreement.  Lingle, 486 U.S. at 413.  Contrary to Kroger's assertions, the Sixth Circuit's decision in Paluda v. ThyssenKrupp Budd Co. does not require

---

[5] Indeed, her complaint does not reference any specific term of the agreement at all, and Kroger has not asserted that Morrow failed to state a claim under the THRA because of this omission.  Kroger's 12(b)(6) argument instead focuses solely on preemption under the LMRA.  (ECF No. 9 at PageID 157.)

[6] Kroger may attempt to defend itself by asserting that its treatment of Morrow was allowed or required by the terms of the collective bargaining agreement, but asserting a defense that requires application of the LMRA does not support removal.  See Smolarek, 879 F.2d at 1333 (citing Caterpillar, 482 U.S. at 398–99)).  Kroger's arguments that Morrow did not exhaust her remedies under the agreement and lacks standing to assert her claims fail for this same reason.  (See ECF No. 13 at PageID 201–03.)

differently. 303 F. App'x at 308. In that case, the plaintiffs filed suit for reverse age discrimination. Id. at 307. They alleged that their employer discriminated against them by denying them the benefit of a lump sum payment because of their age. Id. The plaintiffs argued that they met all of the criteria for the payment, except that they were just shy of turning forty years old. Id. Even though their right to be free from age discrimination did not arise from a collective bargaining agreement, the Sixth Circuit held that the plaintiffs' discrimination claims required contract interpretation. Id. at 308–09.

In contrast to a typical age discrimination claim, the plaintiffs in Paluda alleged discrimination in the allocation of benefits under an agreement between their union and their employer. Id. at 309. As a result, they were required to prove both that they were eligible for the lump sum payment but for their age and that they were similarly situated to other employees who qualified for and received that payment. Id. The Sixth Circuit held that the proof required to state a claim based on the allocation of those benefits was "substantially dependent" on analysis of the collective bargaining agreement. Id. But Morrow's claims here are more like the "typical claims" of discriminatory discharge that the Paluda court distinguished—she does not allege discrimination in the allocation of benefits, she alleges discrimination in termination. See id.

Morrow's allegation that Kroger took an adverse employment action against her by firing her before her pension could vest does not invoke a specific right to a pension under the agreement or require interpretation of the agreement's pension plan. It is true that Morrow would have to prove that she was entitled to a pension under the terms of the plan if she alleged entitlement. See id. But the crux of Morrow's claim is that she was not eligible, and Kroger

9

fired her before she could become eligible.[7] (ECF No. 1-1 at ¶¶ 26, 32, 38, 44 (asserting that Kroger terminates employees who are members of protected classes and "who are close to vesting with the company's pension plan" (emphasis added)); Id. at ¶ 50 ("The plan to terminate employees prior to the vesting of their pensions is a common design between two or more people within Kroger." (emphasis added)).) This distinction is critical. If Kroger fired her before her pension vested, she does not have to prove that she was eligible for it under the terms of the contract, nor does she have to prove that she was similarly situated to employees who were given a pension.[8] Thus, her discrimination claims are not so "inextricably intertwined with consideration of the terms of the labor contract" to warrant removal jurisdiction under the LMRA. See Smolarek, 879 F.2d at 1331 (quoting Allis Chambers, 471 U.S. at 213) (holding that plaintiff's retaliatory discharge claim was not "inextricably intertwined" with the collective bargaining agreement because it only required proof of purely factual questions about the conduct of the employee and the motivation of the employer, not the agreement itself). Morrow's civil conspiracy claim functions the same way.

---

[7] Kroger's reliance on cases involving plaintiffs asserting an entitlement to benefits under a collective bargaining agreement is therefore unhelpful here. (See ECF No. 13 at PageID 200 (citing Slinker, 689 F. App'x at 408–09 (addressing a plaintiff's allegation that the defendant drug tested him in a manner that violated the collective bargaining agreement's terms); Paluda, 303 F. App'x at 309 (addressing a plaintiff's allegation of discrimination in the allocation of benefits under a collective bargaining agreement)).)

[8] Kroger erroneously asserts that Morrow's discrimination claim requires her to prove that similarly situated employees were subjected to differential treatment because they qualified for a pension. (ECF No. 13 at PageID 200.) But Kroger overstates the proof necessary here, where the differential treatment at issue is not the vesting of the pension but the continuation of employment. Morrow alleges that Kroger fired her before she could qualify—Morrow only needs to prove that similarly situated individuals were not fired like she was.

10

B.     Civil Conspiracy Claim

Morrow alleges that Kroger's supervisors engaged in a conspiracy to discriminate against members of protected classes by firing them before their pensions could vest. (ECF No. 1-1 at ¶¶ 48–53.) To plead civil conspiracy under Tennessee law, Morrow must establish that (1) two or more persons had a common design; (2) the common design sought to accomplish an unlawful purpose; (3) those individuals engaged in an overt act in furtherance of the conspiracy; and (4) Morrow suffered injury as a result. See B&L Management Grp, LLC v. Adair, No. 17-2197, 2019 WL 3459244, at *10 (W.D. Tenn. July 31, 2019) (citing Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)).

The unlawful purpose at issue is not the wrongful deprivation of vested pensions—it is the wrongful firing of members of protected classes. (ECF No. 1-1 at ¶ 51 ("The common design is carried out to accomplish, by concerted action, an unlawful purpose of discrimination against employees on the basis of race, sex, disability, age, or other reasons.").) The alleged overt act in furtherance of the conspiracy was firing Morrow. (Id. at ¶ 52 ("The unjustified firing of employees is an overt act in furtherance of the conspiracy.").) Morrow does not assert any right to a pension, and she does not plead any of the terms of the collective bargaining agreement to assert her prima facie case. No one will have to interpret the agreement to determine whether it is unlawful to fire an employee because of their age, race, gender, or disability status.

Because Morrow's state law claims neither assert a right under the collective bargaining agreement nor require proof of its interpretation, Kroger has not established that the LMRA confers federal question jurisdiction over those claims. As explained below, Kroger also has not established that the amount in controversy exceeds $75,000 to support diversity jurisdiction.

## II. DIVERSITY JURISDICTION

Removal statutes are construed strictly and against removal. Tech Hills II Assoc. v. Phoenix Home Life Mut. Ins. Co., 5 F.3d 963, 968 (6th Cir. 1993). A federal court must presume that a case falls outside its jurisdiction until a party proves otherwise. Jefferies v. Seco Architectural Sys., Inc., No. 3:16-cv-171, 2017 WL 385776, at *1 (E.D. Tenn. Jan. 25, 2017) (citing May v. Wal-Mart Stores, Inc., 751 F. Supp. 2d 946, 950 (E.D. Ky. 2010)). Any doubt about the appropriateness of removal is resolved in favor of a remand. Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999).

The amount in controversy is usually determined by the amount claimed in the plaintiff's complaint. Jefferies, 2017 WL 385776, at *2 (citing Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84 (2014)). But when a plaintiff fails to plead a specific amount, the defendant may do so in its notice of removal. Dart Cherokee, 574 U.S. at 84. The defendant must point to clear allegations that "the case involves a sum well in excess of" the minimum jurisdictional amount. Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 572 (6th Cir. 2001) (quoting Cook v. Winfrey, 141 F.3d 322, 326 (7th Cir. 1998)). Although the defendant need not prove to a legal certainty that the amount in controversy has been met, it must provide evidence supporting its assertion when the plaintiff contests jurisdiction. Dart Cherokee, 574 U.S. at 554; Belew v. Seco Architectural Sys., Inc., No. 3:16-cv-172, 2017 WL 385775, at *2 (E.D. Tenn. Jan. 25, 2017). Kroger has provided no evidence here.

Kroger asserts that Morrow's demand for economic damages satisfies the amount in controversy requirement because the average lifespan of a seventy-five-year-old woman is thirteen years, and a modest pension of $480 per month for thirteen years would equal $75,360. (ECF No. 13 at PageID 204.) But Kroger does not provide any specific evidence about

12

Morrow's pay or her potential pension, and Kroger does not assign a monetary value to any of her specific claims.[9]  See Holt v. HMS Host USA, No. 3:09-cv-344, 2009 WL 1794748, at *2–3 (M.D. Tenn. June 18, 2009) (holding that the defendant did not satisfy its burden to prove that the plaintiff's claims for compensatory damages, back pay, front pay, and punitive damages relating to her termination met the jurisdictional amount because the defendant "did not include any specific facts" about the amount or "assign a monetary value" to plaintiff's claims).  The Court will not speculate about the amount in controversy when it was Kroger's burden to prove that the jurisdictional amount is more likely than not satisfied here.  Kroger's decision not to provide evidence or account for Morrow's damages comes at a cost—it has failed to meet its burden of proof to establish diversity jurisdiction.

### III.    ATTORNEY'S FEES

Morrow requests an award of the attorney's fees she incurred in opposing removal.  (ECF No. 12-1 at PageID 191–92.)  A court may award attorney's fees "only where the removing party lacked an objectively reasonable basis for removal."  Martin v. Franklin Capital Corp., 546 U.S. 132, 139 (2005).  When the defendant had an objectively reasonable basis for removal, fees should be denied.  Paul, 701 F.3d at 523.  The question of preemption and the amount in controversy is close enough here to deny Morrow's request for fees.  See id.  It cannot be said that Kroger's decision to remove this case was frivolous or unreasonable.  Morrow's fee request is therefore **DENIED**.

---

[9] Kroger solely relies on a theoretical pension to establish the amount in controversy and states that this theoretical amount is enough to satisfy its burden of proof "without accounting for any of the other damages" at issue.  (ECF No. 13 at PageID 204.)  But Kroger has the burden to account for those damages and provide evidence that they are sufficient to meet the jurisdictional amount.  It has not done so.

## **CONCLUSION**

Morrow does not assert a right established in the collective bargaining agreement and her claims do not require the parties to interpret the agreement. Thus, her claims are not sufficiently preempted by the LMRA to establish federal question jurisdiction. Kroger also failed to meet its burden to prove that the amount in controversy more likely than not satisfies the jurisdictional threshold. Thus, Morrow's motion to remand is **GRANTED**. Her motion to strike and Kroger's motion to dismiss are therefore **DENIED AS MOOT**. This case is **REMANDED** back to Shelby County Chancery Court.

**IT IS SO ORDERED**, this 29th day of January, 2025.

                                                    s/ Sheryl H. Lipman
                                                    SHERYL H. LIPMAN
                                                    CHIEF UNITED STATES DISTRICT JUDGE